(28 Misc. Rep. 37.)

### PEOPLE ex rel. BOYD v. HERTLE et al.

(Supreme Court, Special Term, New York County. June, 1899.)

1. MANDAMUS—TRIAL—FINDINGS BY JURY NOT CONCLUSIVE.
   The findings of a jury on questions of fact in a mandamus case are not conclusive upon the supreme court at special term.

2. SAME—PLEADING—ALTERNATIVE WRIT.
   Stating in petition for an alternative writ of mandamus that one "held a position which was that of a regular clerk," is a sufficient allegation that he was a "regular clerk," without stating more.

3. SAME—PETITION.
   A petition for mandamus sufficiently states that one is a regular clerk when it states facts tending to show that his position is a clerical one.

4. SAME.
   When an alternative writ of mandamus is issued, it becomes the relator's pleading, and supersedes the petition; and it is not necessary to set forth such facts in it as must appear when motion for mandamus is made at special term.

5. MUNICIPAL CORPORATIONS—ABOLITION OF OFFICE—OFFICERS.
   Greater New York Charter, § 123, requires civil service commissioners to prescribe and amend, with the mayor's approval, and to enforce, regulations for appointment and promotions in the civil service, and for classifications and examinations therein. Relator held the position of assistant examiner in the office of commissioners of accounts. The civil service commissioners never classified said position except in a certain Schedule F, which included "all classified positions not included in other schedules, except laborers or day workmen." The commissioners of accounts abolished the position, and discharged the relator. *Held*, that neither the civil service commissioners and mayor, nor the commissioners of accounts, had power to abolish the position, and that relator was entitled to reinstatement by mandamus.

6. SAME—OFFICERS—CIVIL SERVICE.
   Under Greater New York Charter, § 124, which provides that no removal from a civil service office shall be affected or influenced by political or religious opinions or affiliations, it is unlawful to abolish such an office, and discharge the officer, for political affiliations.

Application by the people, on the relation of James M. Boyd, against John Hertle and others, commissioners of accounts, for a writ of mandamus. Writ granted.

Henry De Forest Baldwin, for relator.

John Whalen, Corp. Counsel, for defendants.

SCOTT, J. The relator was, on January 21, 1895, duly appointed, by the then commissioners of accounts of the former city of New York to the position of assistant examiner. He held this position until January 1, 1898, when the present city of New York came into existence. He was duly assigned, under the provisions of section 1536 of the Greater New York charter, to the office of the commissioners of accounts, provided for in said charter, and continued to hold the position of assistant examiner in said last-mentioned office until March 19, 1898, on which day the commissioners of accounts passed a resolution abolishing the position of assistant examiner, thereby in effect removing the relator and nine other persons, who then held that position. On the same day, five of the persons whose positions had been abolished were reappointed as examiners, and a

24    60 NEW YORK SUPPLEMENT   (Sup. Ct.

and 94 New York State Reporter.

few days later eighteen other persons were appointed examiners. The relator protested against his removal, and at length applied for a writ of mandamus to compel his reinstatement. The answering affidavits of the defendants raising certain questions of fact, an alternative writ was duly issued, to which the defendants made return, and the issues of fact raised by the writ and the return thereto have been tried before a jury. Upon the alternative mandamus and return and the verdict of the jury, the relator now moves for a peremptory mandamus. By direction of the justice presiding, the jury found that the relator, on March 19, 1898, was a regular clerk in the office of the commissioners of accounts, and that the commissioners on said March 19, 1898, removed him without affording him an opportunity of making an explanation or defense. The jury further found, upon a submission of the questions to them upon the evidence, (1) that the commissioners, under the pretense of abolishing the relator's office, discharged him; (2) that the commissioners appointed another person under the designation of "examiner" to perform the duties formerly performed by the relator; (3) that the relator's removal was an excuse or pretense for appointing another person in his place; (4) that the relator was removed on account of his political affiliations.

The findings of the jury upon the questions submitted to them are not conclusive upon the court at special term, and it has therefore been necessary to examine the transcript of the testimony taken upon the trial of the issues of fact. After a careful examination, I am convinced, not only that the findings were abundantly justified by the evidence, but that the jury could not well have come to any different conclusions. It is urged, however, on the part of the defendants, that it does not sufficiently appear by the alternative mandamus, or the return thereto, that the relator, at the time of his removal, was a regular clerk, and I am referred to the case of People ex rel. Warschauer v. Dalton, 34 App. Div. 302, 54 N. Y. Supp. 216, affirmed in court of appeals, June, 1898 (159 N. Y. 235, 53 N. E. 1113). In that case, the relator had held the position of "inspector of water supply to shipping, in the department of water supply," and contented himself with stating in his petition that his position was that of a regular clerk, without stating the facts upon which he based this conclusion. As to this, the appellate division said that the relator's mere characterization of the inspectorship as that of a regular clerk was but a part of the petitioner's general conclusion from certain facts precedently stated, and was in no just sense the statement of an independent fact. The court further said: "Whether the relator is or is not a regular clerk depends upon the nature of his duties. These duties are not here disclosed, and, in the absence of a distinct statement on that head, the relator's conclusion that the duties of an inspector of water supply to shipping are those of a regular clerk, cannot well be sustained." Upon this point the reasoning of the appellate division was adopted by the court of appeals. The relator in the present case was more specific in his petition. He states that his duties consisted mainly in checking entries in the books and accounts of the several departments examined, and in preparing for the examiner in charge tabulations and digests of the records and accounts examined, to be

included by him in reports to the commissioners, and that, for a portion of the time he held the position of assistant examiner, a part of his duty was to keep a transcript of the ledger of the city chamberlain. These duties are distinctly clerical in their nature, and it is not suggested that the relator ever performed, or was required to perform, any duties except such as were clerical. In this respect, therefore, the Warschauer Case differs from the present. It differs even more widely, however, in the manner in which the question is raised. In the Warschauer Case the relator moved at special term for a mandamus, and his motion was denied. It does not appear that an alternative mandamus was issued, and a return made thereto, but apparently the motion was decided adversely to the applicant upon a petition and affidavits. Upon such a motion the relator must show to the satisfaction of the court the evidential facts establishing the proposition that his position was that of a regular clerk. In the present case, however, an alternative mandamus was issued and a return made thereto. These became the pleadings in the cause (section 2082, Code Civ. Proc.), and, treating the writ as a pleading, it was not necessary to do more than was done in the present case, which was to allege generally that the relator held a position which was that of a regular clerk; for in an alternative writ, as in any other pleading, only the ultimate facts need be pleaded, and not the evidence which establishes them. The fact that the relator was a regular clerk, having been thus properly pleaded in the mandamus, should have been denied by the return if it was intended to raise any issue in respect thereto. It was not denied, and thus stood on the record as admitted. Hence it appears that in his petition the relator stated facts tending to show that his position was a clerical one. In the alternative mandamus it is sufficiently alleged that he was a regular clerk. This allegation is not put in issue by the return, and, if anything more were needed to sustain the direction of the court as to the verdict upon this point, the evidence clearly shows that the relator's duties were solely clerical in their nature. If, therefore, section 1543 of the Greater New York charter is applicable, the relator's removal was illegal.

There is, however, another ground upon which the removal must be held to have been illegal. Section 124 of the Greater New York charter provides that no removal from an office or employment within the scope of the rules established as provided by that section shall be in any manner affected or influenced by political or religious opinions or affiliations. The jury have found, upon evidence that justified their verdict, that the relator was removed on account of his political affiliations. If, therefore, his position was within the scope of the rules referred to in section 124, his removal was violative of that section and illegal. Section 123 of the charter requires the civil service commissioners to prescribe and amend, subject to the approval of the mayor, and to enforce, regulations for appointment to, and promotions in, the civil service, and for classifications and examinations therein. Such regulations were approved by the mayor, and promulgated on March 5, 1898, prior to the removal of the relator. In the classification then adopted of the positions in the office of the

commissioners of accounts, no mention is made, by name, of the position of "assistant examiner," although that position under that name then existed in the office.    Among the schedules of positions was one known as "Schedule F," the positions in which were subject to competitive examination.    One of the regulations approved by the mayor, and promulgated by the civil service commissioners, known as "Regulation 4," provided that "Schedule F shall include stenographers, typewriters and all classified positions not included in the foregoing schedules, except laborers or day workmen." Unless the position of assistant examiner was, by virtue of this regulation, included in Schedule F, it was not classified at all.    If it was so included, the persons holding it were protected against removal by reason of their political affiliations.    Section 124 of the charter provides that the regulations to be adopted, as prescribed in section 123, shall, among other things, provide "for the classifications of the offices, places and employments in the civil service of the city."    This clearly meant that all the offices, places and employments in the civil service of the city should be classified and put in one schedule or another.    It could not mean, and could not well be understood as meaning, that the commissioners might classify only such places and offices as they chose, leaving a portion unclassified, and therefore unaffected by the stringent provisions of the charter.    The obvious and natural construction of regulation 4, above quoted, was to place in Schedule F, subject to competitive examination, all the positions and places not specifically and by name included in any other schedule; or, in other words, to include in Schedule F all places and positions subject to classification, and not classified elsewhere.    It is only by placing this construction upon regulation 4 that the classification can be held to be, as it was unquestionably intended to be, conformable to the requirements of the charter.    The omission to include the assistant examiners in any schedule by name did not operate to take them out of the classified service altogether, for that would have been contrary to the statute; nor did it operate to abolish their offices, for neither the civil service commissioners nor the mayor had power, by their regulations, to create or abolish offices, but merely to classify those which already existed or might thereafter be created by proper authority.    The position of assistant examiner held by relator, therefore, fell within the scope of the civil service regulations, and it was unlawful to remove him on account of his political affiliations.    Upon the facts as found by the jury, the relator is entitled to a writ of peremptory mandamus.    People v. La Grange, 7 App. Div. 311, 40 N. Y. Supp. 1026.

Motion granted, with costs.