In the Matter of ALFRED J. THOMAS, Respondent, against PAUL J. KERN et al., as the Municipal Civil Service Commission of the City of New York, Appellants.

In the Matter of JACOB GROBISEN, Respondent, against PAUL J. KERN et al., as the Municipal Civil Service Commission of the City of New York, Appellants.

In the Matter of SAMUEL BRESS, Respondent, against PAUL J. KERN et al., as the Municipal Civil Service Commission of the City of New York, Appellants.

Argued March 3, 1939; decided April 11, 1939.

*William C. Chanler, Corporation Counsel* (*Jeremiah M. Evarts* and *Paxton Blair* of counsel), for appellants. The Civil Service Commission properly exercised its discretion in providing a credit for educational training in relevant fields. Such training bears directly upon qualifications for the position and constitutes a valid test of relative merit and fitness for the position. (*Matter of College of City of New York* v. *Hylan,* 205 App. Div. 372; 236 N. Y. 594; *Stuart* v. *School District,* 30 Mich. 69; *Matter of Benedetto* v. *Kern,* 167 Misc. Rep. 831; 255 App. Div. 753; 279 N. Y. 798; *People ex rel. Moriarty* v. *Creelman,* 206 N. Y. 570; *Matter of Barthelmess* v. *Cukor,* 231 N. Y. 435.) The Commission properly exercised its discretion in providing a credit for athletic training. Such training bears directly upon qualifications for the position and constitutes a valid test of fitness. (*People ex rel. Moriarty* v. *Creelman,* 206 N. Y. 570; *Matter of Barthelmess* v. *Cukor,* 231 N. Y. 435.) The Commission properly fixed the maximum age of twenty-nine for the lists. Appointments from such lists do not violate the Civil Service Law (Cons. Laws, ch. 7, § 25-a). (*Matter of Laverty* v. *Finegan,* 249 App. Div. 411; 275 N. Y. 555.)

*Albert De Roode* for Alfred J. Thomas, respondent. The giving of a preferred " credit " or bonus on a discretionary and undisclosed scale for collegiate education and organized athletic experience as a means of emasculating the competitive rating violates the requirement for competition. (*Matter of Fink* v. *Finegan,* 270 N. Y. 356; *Matter of Andresen* v. *Rice,* 277 N. Y. 271; *Matter of O'Callaghan* v. *Finegan,* 276 N. Y. 587.)

*Thomas Bress* and *Sol Drescher* for Jacob Grobisen et al., respondents. The grant of bonus credits for college training and for formal disciplined athletic training impairs

the competition required by the State Constitution (Art. 5, § 6). (*Matter of Andresen* v. *Rice*, 277 N. Y. 271; *Matter of Barthelmess* v. *Cukor*, 231 N. Y. 435; *Matter of Sheridan* v. *Kern*, 166 Misc. Rep. 920; 255 App. Div. 57; *Matter of O'Callaghan* v. *Finegan*, 166 Misc. Rep. 556; 276 N. Y. 587.) The fixing of twenty-nine years as the maximum age limit for special patrolman and patrolman, P. D., special list, is in violation of section 25-a of the Civil Service Law. (*Matter of Sloat* v. *Board of Education*, 274 N. Y. 367.)

*Leopold V. Rossi* for Civil Service Forum, *amicus curiæ*. Any preferences, other than to disabled World war veterans, are unconstitutional and violate section 6 of article 5 of the State Constitution. (*Matter of Sheridan* v. *Finegan*, 166 Misc. Rep. 920; 255 App. Div. 57; *People ex rel. Fowler* v. *Moskowitz*, 175 App. Div. 710; 220 N. Y. 669; *Matter of Barthelmess* v. *Cukor*, 231 N. Y. 435; *Aversa* v. *Finegan*, 164 Misc. Rep. 162; 275 N. Y. 512; *Matter of Sullivan* v. *Finegan*, 163 Misc. Rep. 755; 275 N. Y. 479; *Matter of O'Callaghan* v. *Finegan*, 276 N. Y. 587.)

*James H. Tully* for Patrolmen's Benevolent Association of the City of New York, *amicus curiæ*. The proposal to weigh college training and disciplined formal athletic training is unconstitutional and in conflict with the Civil Service Law. (*Matter of O'Callaghan* v. *Finegan*, 166 Misc. Rep. 556; 276 N. Y. 587; *Matter of Sheridan* v. *Finegan*, 166 Misc. Rep. 920; *Matter of Barthelmess* v. *Cukor*, 231 N. Y. 435; *People ex rel. Kennedy* v. *Feldman*, 179 App. Div. 295; *Matter of Ryan* v. *Finegan*, 166 Misc. Rep. 548; 253 App. Div. 713.) The creation of patrolman, P. D., special list, is unconstitutional and contrary to the Civil Service Law and the Administrative Code (L. 1937, ch. 929). (*Matter of Andresen* v. *Rice*, 277 N. Y. 271; *Matter of Fink* v. *Finegan*, 270 N. Y. 356.)

FINCH, J. In this proceeding the Municipal Civil Service Commission has been enjoined from certain acts in connec-

tion with the holding of a proposed examination for policemen.

There are three principal questions presented for decision as follows: (1) Whether the provision of a credit for educational training in relevant fields was so arbitrary and unreasonable as to be without the sphere of the proper exercise of judgment by the Municipal Civil Service Commission; (2) a similar query with reference to a credit for organized athletic training; and (3) whether the fixing of a maximum age limit of twenty-nine years for the list of special patrolmen violated section 25-a of the Civil Service Law (Cons. Laws, ch. 7).

Facts sufficient to indicate briefly the grounds for the decision are as follows:

This proceeding seeks to cancel the notice of examination published by the Commission on December 1, 1938, from which examination it was intended to promulgate three lists: Patrolmen P. D., Patrolmen P. D., Special List, and Special Patrolmen.

The rating will be on a percentile basis. The 3,600 candidates having the highest marks in this written test will stand in the order of comparative rating. Such test will have a weight of .7. This first examination will be designed to weigh the essential qualifications of aptitude, common sense, initiative, intelligence, judgment and reasoning ability. Still maintaining the procedure of anonymous rating of the candidates, credit on a competitive basis will be added, not exceeding .04 of the weight of the mental test of .7 or .028 of the total weight, to the mental average of each successful candidate because of formal education of college grade in a relevant field at an institution accredited by the University of the State of New York. This credit will not affect the passing mark and will be awarded only to the 3,600, and then on a uniform basis for chemistry, engineering, law, languages, physics, social work, sociology and other relevant courses. The 3,600 will likewise receive competitive credit for a physical test, which will have a weight of .3. Credit not to exceed .04 of the weight of the

physical test, or a total of .012 of the total weight, will be added competitively for disciplined formal athletic training in amateur, college or professional athletics of an organized character. Out of the 3,600, the 1,200 candidates who receive the highest final average will, in the order of competitive rating, constitute the eligible list of Patrolman P. D. The 1,200 who receive the next highest final general average will, in the order of competitive rating, constitute the eligible list of Special Patrolmen for the Board of Water Supply, Board of Transportation, etc. Persons appointed from this Special Patrolmen List will not be eligible for transfer to the Police Department. Those of the 3,600 who score eighty per cent or better on the mental test will be added to the first 1,200 and together they will constitute an eligible list of Patrolmen P. D., Special List. For this third list there will be a waiver of height, weight and physical requirements. Their rank will be in the order of their mental scores.

In providing a credit for educational training or for organized athletic training in relevant fields, has the Municipal Civil Service Commission gone outside the proper field for the exercise of judgment by an administrative body? We think not. All are agreed that in order to maintain law, order and adequate protection for society against modern, organized criminals in the cities of the country, and particularly in the city of New York, the Police Department needs a personnel as able as it is possible to obtain. It is conceded in the brief of petitioner that the candidate with college training " has an advantage in equipment." In this attempt to meet the needs of the present, the examination seeks to apply competitively two areas of competence and equipment for the position in the form of a credit for training in education in relevant fields and in organized athletics. The credit in education is not given for a college degree, but for training in education in subjects important in the work of the Police Department, and is added after and only provided the mental test has been passed successfully. The maximum credit which can be received for

educational training is only .028, and it is highly improbable that any candidate will have received educational training in all relevant subjects and be thus entitled to this maximum credit. Likewise the maximum credit for training in organized athletics is only .012. The final result reached departs in no way from the competitive principle and from the usual case in which, after a competitive score is arrived at on a mental test, another competitive score is reached on an experience and education test, and the two competitive scores combined in certain prescribed weights, furnish a third and final competitive score. A person who has had such training in a relevant field will, for that reason, make a more useful policeman. To provide a credit for such training complies with the provisions of the Civil Service Law which provides " the examinations * * * shall relate to those matters which will fairly test the relative capacity and fitness of the persons examined to discharge the duties of that service into which they seek to be appointed." (Civil Service Law, § 14.) It is urged, however, that we must hold as a matter of law that a credit for college training in a relevant field cannot be given upon the ground that it is not the equivalent of experience. Free college education is afforded by the taxpayers of the city of New York to poor and rich alike, in order to fit the persons receiving it for positions in life. The laws provide many examples where college training in a relevant field is accepted as legally interchangeable with experience. In examinations for license as professional engineers, the Board of Examiners may accept a complete year of study in a registered college in lieu of one year of experience, and may exempt from a part of an examination a graduate of a college maintaining satisfactory standards. (Education Law [Cons. Laws, ch. 16], § 1452.) In the licensing of plumbers, ten years' experience may have as a substitute three years' experience together with a technical degree in engineering from a college or university approved by the Regents of the University of the State of New York. (Charter of the City of New York, Laws 1901, ch. 466, amd. by L. 1936, ch. 610, § 1575; see now § 816-3.0

of Administrative Code of City of New York [L. 1937, ch. 929].) In admissions to the bar, college training is a substitute for actual experience in a law office. An enlightened public interest demands that professional men be educated in the duties of their professions. In the Police Department educational training and training in organized physical activities are required not only because of the availability of modern inventions and free education to persons without character who plan and engage in organized crime and, therefore, compel equally well-trained patrolmen to cope with them, but because under the system of promotion in the New York Police Department all officers must be taken from the ranks. In other departments of the city, incumbents of higher positions on the other hand are chosen only after competitive examinations. If frustrated in the attempt to obtain better equipped patrolmen, will not the force of public opinion demand competitive examinations for officers in the Police Department? In *People ex rel. Moriarity* v. *Creelman* (206 N. Y. 570, 577) this court held that the Civil Service Commission, " representing the public did have the right to require that before appointment * * * fitness should be measured and established by any test honestly and reasonably appropriate to that end * * *." It is urged, however, that a credit for educational training in a relevant field constitutes a preference or bonus. This is not so for the reason that a preference or bonus is an arbitrary award given without reference to qualifications for the position, whereas a credit for educational training in a relevant field or for training in organized athletics, is based upon qualifications and, therefore, does not constitute a preference or bonus. (Cf. *Matter of Barthelmess* v. *Cukor*, 231 N. Y. 435.) It is urged that the giving of a credit for educational training in a relevant field arbitrarily favors someone on the list as against others. This fails to take into account the fact that the application of the credit is competitive, that it is figured from an anonymous sheet, so as to preserve the anonymity of the candidate, and that, like every test of relative merit and fitness, the

final score of every candidate is affected. It appears in the record that educational training has always been used as a test of merit and fitness in examinations. In examinations for X-ray technicians, education and experience receive a weight of 4; junior civil service examiner, a weight of 3 for education and experience; junior electrical engineer, grade 3, a weight of 3 for education and experience. In the last examination for fireman F. D., a credit of not more than five per cent was given to successful candidates who possessed relevant engineering degrees from accredited institutions. Moreover, the credit was given in the precise manner here adopted.

At Special Term it was urged that credit for training in organized athletics was limited to college or professional athletics. It is clear, however, from the language used, that it was not so limited but includes credit for participation in organized athletics in or out of college.

It, therefore, follows that the Municipal Civil Service Commission was not arbitrary or unreasonable when it arranged for a credit for educational training in relevant fields or for organized athletic training so as to require judicial reversal of the action of the Commission.

It has been urged that to create the Patrolmen P. D., Special List, would offend section 434a–3.0 of the Administrative Code in regard to the organization of the Detective Bureau in the Police Department. Whether appointments from such list may be made to the Detective Bureau is not now before this court. For the present it is sufficient to say that the mere promulgation of the list does not injure the petitioners.

The establishment of a list for special patrolmen for such positions as are properly open for appointment from that list, and the fixing of a top age limit of twenty-nine lies within the judgment and discretion of the Municipal Civil Service Commission, as does also the establishment of a Patrolmen P. D. List of short duration, the holding of mental tests in advance of the physical test, and the creation of multiple lists from this examination.

In each proceeding, the orders appealed from should, therefore, be reversed and the applications denied, without costs, in accordance with this opinion. (See 280 N. Y. 813.)

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur.

Ordered accordingly.