In the Matter of the Application of MORRIS BORODKIN, Petitioner, for an Order against PAUL J. KERN, President, and Others, Members, Together Constituting the Municipal Civil Service Commission of the City of New York, Respondents.

Supreme Court, Special Term, New York County, June 26, 1940.

*Albert B. Breslow*, for the petitioner.

*William C. Chanler*, *Corporation Counsel* [*Louis M. Weintraub* and *Robert W. Herman* of counsel], for the respondents.

Levy, J. Petitioner seeks an order to compel the municipal civil service commission to grant him an oral examination and a rating in experience for the position of supervisor of park operations. A written examination was held on the 25th day of March, 1939, covering the first portion of the test, in which petitioner participated. In accordance with the rules of the commission, the notice contained the following pertinent information as to the subjects, weights and passing marks: "Experience, weight 3, 70% required; Duties, weight 4, 75% required; Technical-Oral, weight 3, 70% required."

Thereafter an amended notice was published which extended the time for filing application, but did not designate the passing marks. It did, however, assign the same weights to each of the subjects. That portion of the test referred to as "Duties" was given first. It was in writing and 281 applicants participated. The paper advised the candidates as follows: "The thirty (30) highest candidates in the written test who have attained a mark of not less than 75% will be passed in this test. In the event of a tie for the thirtieth place all persons tied will be passed." No preliminary notice of such limitation was given until the candidates saw it on their instruction sheets in the examination room. Petitioner received a mark of seventy-six and nine-tenths per cent, but as he stood thirty-second he was denied the opportunity to be rated on the other portions of the examination.

The question presented is whether the commission could limit the number of successful candidates by refusing to those unsuccessful in a part of the examination the right to be examined in the remaining subjects. The answer to this question must be tested in the light of the familiar requirement of the civil service provision of the Constitution (Art. V, § 6): "Appointments and promotions in the Civil Service * * * shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which so far as practicable, shall be competitive; * * *."

An examination must test merit and fitness and it must be competitive. The written part in which petitioner participated constituted only forty per cent of it. The announcement prescribed seventy-five per cent as a minimum requirement. So far there can be no quarrel. If the commission had decided that no candidate would be considered for a further test unless he obtained a passing mark of seventy-five per cent in the written part, it would have been well within its rights. Usually, the announcement of the competitive examination provides that a candidate must have a passing mark in each of its branches. Accordingly, one who has failed to attain the minimum grade on the written portion could

not possibly make up this deficiency, no matter how high his ratings on the others. Here, however, the situation is somewhat different. The practical fitness of a candidate for the position is tested, in greater part, by his rating in experience and the technical-oral. These two tests of ability constitute sixty per cent of the whole. The applicant, nevertheless, was denied the right to have his fitness thus rated. The list, as it was promulgated, did not represent a fair competitive rating of all the candidates who had passed the qualifying written test. In that respect there does not seem to have been compliance with constitutional requirement.

Respondents point to the large number of examinations which they have conducted, such as the one for patrolman, in which there were 33,000 applicants. That case was referred to in *Matter of Thomas* v. *Kern* (280 N. Y. 236). There it was advertised that the 3,600 candidates having the highest mark in the written test would stand in the order of comparative rating. That test was to have a weight of seven out of ten. The question of the right to take a fixed number of those passing it, regardless of rating, and rejecting the remainder, was not squarely considered in the opinion. In a large scale examination, in which so many candidates participated, it would not be unreasonable for the commission to determine that the mark of the 3,600th person in the written test should constitute the preliminary passing mark, considering that this portion constituted seventy per cent of the weight of the total grade. The announcement there, however, did not require a definite grade on the first test. In that respect, it differs from the case under consideration. Having passed the written examination which constituted only forty per cent of the total, petitioner was entitled to be examined in the other subjects. The failure to evaluate the qualifications in respect of sixty per cent of the test, of those who reached the standard in the written, affects the validity of the competitive rating, and does not seem to be in accord with the spirit of the constitutional requirement.

The opinion of the Appellate Division in *Matter of Bridgman* v. *Kern* (257 App. Div. 420; affd., 282 N. Y. 375) supports this view. There the instruction was that examiners should fail not less than about one-half the total group of candidates. That direction was given by the commission in private, it is true, but the court said as to this: " The instruction, to ' fail not less than about one-half the total group of candidates,' was illegal. In effect it told the panel of examiners that, irrespective of how many candidates, in their judgment, should justly be rated above the passing mark, no more than one-half of the competing candidates were to be passed. Such direction was clearly improper when a passing mark was established. The passing mark might be made

as high as the circumstances justified. That would be a different matter from directing compulsory failure of a definite percentage of candidates, irrespective of the mark they actually received or to which they were entitled. For example, if it should appear to the panel examiners that all candidates were above the passing mark, there would be no proper basis upon which one-half of the candidates might be failed, unless the passing mark was changed. While it appears that all of the petitioners passed the technical oral test and, accordingly, may not have been aggrieved by the instructions given, it is not certain that others who failed this half of the test were not aggrieved thereby."

In its *per curiam* opinion of affirmance the Court of Appeals stated that " The direction that the ' examiners should fail not less than about one-half the total group of candidates ' was improper." The limitation of the list to a definite number of persons attaining a specified minimum percentage, seems thus to be definitely illegal. The situation where the examining authorities set the passing mark for the qualifying part at the rating attained by the last of a specified number of candidates, seems to be reasonable, where a very large number of applicants is involved. This is true because there is no definite limitation in law upon the examining authorities as to the percentage minimum to be fixed. Here, however, the commission announced that seventy-five per cent qualified a candidate for the rest of the examination, but the latter portion would not be given to him unless he was one of the first thirty. This procedure may assure fitness of the successful candidate, but it violates the competitive principle which, surely, in the case of a moderate number of candidates it is " practicable " to apply.

The violation of the competitive standard appears readily from this simple illustration. Here is a candidate who has obtained seventy-six and nine-tenths per cent on the subject of " duties." He is qualified by the very standard set by the commission, at least in part. Without more, however, it declares that he is unfit as to the rest, even without affording him a trial. In fact, his possible rating, if he were given an opportunity, on the subjects of technical-oral and experience, might approximate the maximum. Nevertheless, another, who, mayhap, has barely managed to reach the inner circle of thirty, and whose rating on the subsequent portions may not be very much above the passing mark, is placed on the eligible list. Such a procedure is arbitrary and capricious, and sacrifices the constitutional injunction to obtain eligibles of the highest merit and fitness in the civil service, to the spirit of false economy.

The motion is granted. Settle order.