In the Matter of MORRIS BORODKIN, Respondent, against PAUL J. KERN et al., Constituting the Municipal Civil Service Commission of the City of New York, Appellants.

Argued February 26, 1941; decided April 17, 1941.

*William C. Chanler*, Corporation Counsel (*John D. J. Moore, Jr.*, and *Louis M. Weintraub* of counsel), for appellants.

*Albert B. Breslow* for respondent.

Order affirmed, with costs; no opinion.

Concur: LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS and CONWAY, JJ. DESMOND, J., dissents in the following opinion in which FINCH, J., concurs.

DESMOND, J. (dissenting). In March, 1938, the Municipal Civil Service Commission of the City of New York published a notice of examination for the position of " Supervisor of Park Operations." The notice stated that the

examination would be divided into three parts, to wit: "Subjects and Weights: Experience, weight 3, 70 percent required; duties [written], weight 4, 75 percent required; technical-oral, weight 3, 70 percent required." For reasons not here material the examination was not held at the time announced. Thereafter, the Commission published an amended notice of examination for the position listing the subjects and weights as above except that the per cents required were not stated. The written part of the examination was first conducted, and the applicants, including petitioner, were advised before the examination that, "The thirty (30) highest candidates in the written test who have attained a mark of not less than 75% will be passed in this test. In the event of a tie for the thirtieth place all persons tied will be passed."

The thirtieth highest candidate attained a grade of 77.4 per cent in the written test. Petitioner's grade was 76.9 per cent. Failing to place among the thirty highest candidates, petitioner was not permitted to take part in the technical-oral test and received no rating for his experience.

The courts below have held that the requirement that applicants must place among the thirty highest and attain a grade of 75 per cent in the written test in order to qualify to participate in the rest of the examination was arbitrary, capricious and in conflict with the constitutional provision that an examination to determine merit and fitness so far as practicable shall be competitive.

Although not required by the Civil Service Law (Cons. Laws, ch. 7) or the Rules of the Commission, petitioner was informed before participating in the written test of the standard that he had to reach in that test in order to qualify for admission to the remainder of the examination. The fact that a different standard was originally announced in no way prejudiced him. In *Matter of Brady* v. *Finegan* (246 App. Div. 526; affd., 269 N. Y. 571) the standard to be attained was changed after the examination was held. But for the change, the applicant's name would have been on the eligible list. Nevertheless, relief was denied. The change in the standard here affected every applicant for the position

alike. The action of the Commission in this respect was neither arbitrary nor destructive of competition.

Petitioner does not challenge the subjects of the examination or the relative weights given to each. No one doubts that a civil service commission may use several successive tests for a particular position and ascribe to each a reasonable relative weight (Cf. *Matter of Cowen* v. *Reavy*, 283 N. Y. 232), that it may, and possibly must, establish a minimum standard to be attained by an applicant in each of the qualities tested, that it may fix a minimum per cent, such as 75 per cent, and that it may require candidates to attain a certain per cent in the first part of an examination in order to qualify to compete in the remaining parts of the examination.

The question presented upon this appeal is whether a civil service commission may in advance set as a minimum standard of proficiency the grade to be attained by a certain number of the candidates taking an examination but which grade shall be not less than a fixed per cent.

By the notice given at the time of the written test, the Commission said that the passing grade would be that grade attained by the thirtieth highest candidate, but, in the event that thirty did not attain a grade higher than 75 per cent, then the passing grade would be 75 per cent. Since petitioner's grade was lower than that attained by the thirtieth highest candidate, he failed to meet the minimum standard which prevailed. The courts below have viewed the minimum standard of 75 per cent as the passing grade set by the Commission. Actually the passing grade set by the Commission was 77.4 per cent, the grade attained by the thirtieth highest candidate.

Measurement of merit by relative position is not new. The same method was brought to the attention of this court in *Matter of Thomas* v. *Kern* (280 N. Y. 236), although not there commented upon. It is urged as a distinguishing feature that the group in that case was considerably larger than the group which was tested in this case, 33,000 as compared to 449. However, no reason has been advanced why the method of comparative rating violates the principle

of competition when applied to a group of several hundred, but does not do so when applied to a group of several thousand. Petitioner claims that the method here used was disapproved in *Matter of Bridgman* v. *Kern* (282 N. Y. 375). In that case the examiners were instructed to fail not less than about one-half of the group of candidates for the particular position in a technical-oral examination and to give the unacceptable candidates ratings below 60 per cent. This court held the instruction to be improper. But there merit was not to be measured by objective standards, no minimum standard was established, and there was no way to determine how the candidates were ranked. Here petitioner argues also that although he did not attain the prevailing minimum standard of 77.4 per cent in the written test, he might be so proficient in other parts of the examination as to bring his final average above that of many of the applicants who did attain 77.4 per cent in the written test. The same argument can be made, however the minimum standard is established, in every civil service examination which is divided into several parts.

Here it was announced in advance that the minimum standard would be the mark reached by a certain number of the group, with the added safeguard that this mark must be not less than 75 per cent. Such a standard is no more destructive of competition than the traditional fixed per cent standard, for it affects all candidates alike and, fixed in advance, cannot be used to discriminate against any candidate. There may be instances where a minimum standard based solely on ranking would be inadequate but the size of the group here examined and the presence of a standard of a fixed per cent below which no one could fall and still qualify for the rest of the examination justify its use in this case.

The order of the Special Term and the order of the Appellate Division should be reversed and the petition denied.