(49 App. Div. 71.)

PEOPLE ex rel. LANGDON et al. v. DALTON, Commissioner, et al.

(Supreme Court, Appellate Division, Second Department. March 20, 1900.)

MUNICIPAL CORPORATIONS—CIVIL SERVICE—STREAM CLEANERS—CLASSIFICATION —PROCEEDINGS FOR REINSTATEMENT.
   The position of "stream cleaner," in the city of New York (whose duties require him to keep clean the water running in streams, removing therefrom rubbish or other injurious materials, and to prevent the pollution thereof), being within the capacity of an ordinary laborer, falls within the description of "laborers and day workmen," which, under the classification of the civil service for the city of New York, under Laws 1898,

c. 186, is classified as not subject to competitive examination; and manda-
mus will not lie for the reinstatement to such position of one appointed
thereto on passing an examination under the act of 1883.

Appeal from special term, Queens county.

Application by the people, on the relation of Abram Langdon and
others, against William Dalton, as commissioner of water supply
of the city of New York, and another, for a writ of mandamus re-
quiring defendants to reinstate the relators in the employment from
which they had been removed. From an order granting the writ as
prayed, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH,
WOODWARD, and HIRSCHBERG, JJ.

William J. Carr (Luke D. Stapleton, on the brief), for appellants.
George Wallace, for respondents.

HATCH, J. When this proceeding was before us on a former
appeal, we affirmed an order which denied the application for a man-
damus, without prejudice to relators' right to institute a new pro-
ceeding. The reason for this ruling was found in the fact that it
was conceded that the relators were employed in the water depart-
ment of the former city of Brooklyn, and classified in the civil serv-
ice of such city in Schedule B. Such classification subjected them
to competitive examination, and each passed such examination be-
fore receiving his appointment. We were unable, from the record
then before us, to determine whether upon the reclassification of the
civil service for the city of New York, pursuant to chapter 186 of
the Laws of 1898, such positions were continued as those requiring
a competitive examination or not; and as it did not appear what the
duties of the positions were, or that the positions had been abolished
or placed in the noncompetitive class, leave was granted to renew
the application. People v. Dalton, 46 App. Div. 264, 61 N. Y. Supp.
263. The opposing papers upon the present application, which must
be taken as true, as well as the undisputed facts of the case, show
that the position of stream cleaner has not been inserted in any
competitive class in the civil service of the city of New York, by
name. The duties attached to the relators' positions in detail re-
quired them to keep clean the water running in the streams, re-
moving therefrom any rubbish or other injurious material, and to
prevent the creating of any nuisance thereon or pollution thereof.
It is apparent, therefore, that the discharge of these duties is quite
within the capacity of an ordinary laborer, and such is the natural
designation of a person performing such service. It is in fact man-
ual labor, and the pay attached to the position—two dollars per day
—is also indicative of the fact. It is stated in the affidavit of Mr.
Phillips, the secretary of the municipal civil service commission of
the city of New York, that such commission, appointed and acting
pursuant to law, classified the relators' position in the civil service
of the city as that of "laborer and day workman." These positions
are classified in Schedule G, and are not subject to competitive ex-
amination. It is said that the statement of Mr. Phillips is a mere
conclusion of law. If it be so regarded, it is reasonably clear that

it is sound law, as applied to the facts. The relators under the reclassified service must fall into Schedule F or Schedule G. The former is a classification of miscellaneous positions not elsewhere classified, and reads, "Schedule F shall include stenographers, typewriters and all classified positions not included in the foregoing schedules, except laborers or day workmen." The rule is now settled that the statute authorizing classification to be made under the authority conferred by the statute (chapter 354, Laws 1883, as amended by chapter 186, Laws 1898), and requiring competitive examinations as a condition of appointment to the civil service of the state, must be strictly construed. People v. Van Wyck, 157 N. Y. 495, 52 N. E. 559. By virtue of the former law (chapter 354, Laws 1883), the rules promulgated were required to provide for open competitive examinations, unless such examinations were found impracticable. By the state constitution of 1894 (article 5, § 9) it was commanded that appointments and positions in the civil service of the state should be made according to merit and fitness, to be ascertained, so far as practicable, by competitive examinations. Under this article the courts have recognized the existence of positions for which competitive examinations are not practicable. Chittenden v. Wurster, 152 N. Y. 345, 46 N. E. 857, 37 L. R. A. 809. The law authorizing formulation into classes (chapter 186, Laws 1898) recognizes such fact, and has made provision therefor, within the mandate of the constitution and the authorities construing the same. It has been the generally accepted doctrine throughout the state that as to the positions of laborers and day workmen, performing ordinary manual labor, it was not practicable to employ competitive examinations in order to determine fitness, and such persons have usually been classified in the noncompetitive schedules. Denominating manual laborers by a particular name does not change the fact. Calling persons "stream cleaners" does not change the character of the duties which they perform. If a scrub woman should be called, "My lady cleaner," we apprehend that it would not be thought necessary to subject such person to a competitive examination, or create a new classification, upon that account. When, therefore, it appears that the duties which attach to a position demand only the performance of unskilled manual labor, such positions are properly placed in the noncompetitive schedules, no matter by what name they are called. We are not able to comprehend what examination could be formulated to test the capacity of stream cleaners which would not apply with equal force to any other class of manual labor. They were to keep the streams clear of rubbish or other injurious material, and prevent the creation of nuisances and the pollution of the stream. They might be asked what they would do if they saw a dead dog floating in the stream, or, if they saw a person throw or attempt to throw offal in the stream, whether it would be their duty to remove it or prevent the act. But it is manifest that a competitive examination in reference to such mere manual acts is not practicable, as a test of fitness. It is not only not practicable, but it is foolish, as it is evident that a very low order of intelligence would comprehend all that was essen-

tial to properly perform the duties of the position; and a competitive examination can scarcely be said to determine either merit or fitness, as applied to such a case. Indeed, a man might answer correctly all of the questions which could possibly be formulated upon such an examination, and yet lack physical strength to perform the duties, or be so indolent as to lack the disposition. The former classification of these positions in a competitive schedule is not conclusive. On the contrary, it is quite consistent with the fact that upon trial it was found not to produce satisfactory results, or that it was unnecessary. When the present classification was made, it was not named; and it may be assumed that it was for a satisfactory reason, especially as it is evident that the position properly falls within the classification of "laborer." Nothing which appears in People v. Hertle, 28 Misc. Rep. 37, 60 N Y. Supp. 23, or in the affirmance of that case upon appeal (46 App. Div. 505, 61 N. Y. Supp. 965), in any wise conflicts with this view. The court was there speaking of an assistant examiner, which the court held—and we think correctly—was a position for which the statute required a competitive examination. Not only did the statute require it, but the constitution and the rules of the civil service commission, as well. In the latter case the rule provides "that no public employé, however designated, whether as 'skilled laborer' or otherwise, who may be called to do or shall, in fact, do any clerical work, shall be included in Schedule G." It was held that, as the position fell in the competitive class, the omission to classify the same by name did not destroy the protection which the law gave, and it was for that reason brought within the express provisions of Schedule F. The character of the duties determined the classification. So here the character of the duties determines the classification. As the duties of the position held by the relators brought them within the designation of "laborers," they were not only mentioned, but they were classified in Schedule G, where they properly belonged. It follows that the order should be reversed, and the writ dismissed.

Order reversed, with $10 costs and disbursements, and peremptory writ of mandamus dismissed, with $10 costs. All concur.