In the Matter of the Application of SEYMOUR FRIEND, Petitioner, Appellant, for an Order Pursuant to Article 78 of the Civil Practice Act, against LEWIS J. VALENTINE, as Commissioner of the Department of Police of the City of New York, and PAUL J. KERN and Others, as Commissioners Comprising the Municipal Civil Service Commission of the City of New York, Respondents.

First Department, January 17, 1941.

*Samuel A. Spiegel* [*William L. Brody* with him on the brief], for the appellant.

*David DuVivier* of counsel [*Paxton Blair* with him on the brief; *William C. Chanler, Corporation Counsel*], for the respondents.

UNTERMYER, J. The question presented is whether an eligible list, having the same title as the position to be filled in the municipal civil service, may be disregarded under the circumstances of the present case.

Previous to 1939 it was usual in the New York city police department for sergeants to be employed on telephone switchboard duty, for the reason that instructions or orders could be given immediately to patrolmen reporting to the station house. It was then decided that a substantial economy would be effected by replacing these members of the uniformed force with men who would perform such duties exclusively at a much reduced salary.

On July 1, 1939, there was set up in the budget for 1939–1940 an undefined number of positions under the title of telephone operator at a salary of $1,500 per annum, with the reservation that the exact number would be determined at a later date in accordance with departmental requirements.

On October 11, 1939, rule 78 of the Rules and Regulations of the Police Department was amended to read:

" Sergeants will rotate on Telephone Switchboard duty in periods of 4 hours on each tour, *except when a Civilian Operator is assigned thereto.* When three sergeants are scheduled for duty with a platoon on any tour, the third, in turn, will perform the entire tour of patrol.

" *Commanding officers concerned will be held personally responsible that Civilian Employees assigned to operate switchboards are instructed in the provisions of the Rules and Regulations, Manual of Procedure and orders of the Police Department applicable to all members of the Police Department, and that they are particularly instructed in the provisions of the following numbered Rules and Paragraph of the Manual:*

" *Rules 84, 174, 182, 184 and 222, and Par. 52 of Art. 35 of the Manual of Procedure.*

" *Also governed by the Rules and Regulations and Manual of Procedure, and orders of Police Commissioner applicable to them.*"

The amendment (indicated by italics) obviously was made to conform rule 78 to the new plan or policy of the department in the employment of civilian telephone operators.

At the time these new positions were established there was in existence an open competitive list for telephone operator (male) grade 1. On October 23, 1939, upon certification by the municipal civil service commission, the police commissioner appointed thirty-eight persons from that list, all of whom still hold their positions. These appointments exhausted the list.

In March and April, 1940, the police commissioner appointed, provisionally, 260 persons from a list for patrolman, which had been promulgated on October 4, 1939, to perform switchboard duty in precinct station houses. No claim is made that these appointments were illegal in their inception, since there was not available at that time any civil service list for telephone operator. On June 4, 1940, the commissioner rescinded 166 of these 260 appointments because these persons, appointed provisionally, had been reached in regular order for certification and appointment to serve a probationary period as patrolmen. There remained on October 10, 1940, when this proceeding was initiated, 87 persons from those previously appointed from the patrolman list still

temporarily employed in the police department in the capacity of telephone operators.

In the meantime an examination for the position of telephone operator (male) grade 1, was advertised. The announcement, which appeared in the City Record of November 25, 1939, stated: " Vacancies: 40 anticipated in the Police Department," and set forth specifically the " Duties" of the position and the " Requirements " of the candidates. Of the 1,080 applicants who paid the required fee and took the open competitive examination, 390 were successful. On August 14, 1940, the new list resulting from that examination was duly promulgated. On August 23, 1940, the respondent municipal civil service commission certified to the respondent police commissioner 120 men on that list to replace persons on the patrolman list who were then provisionally employed in the police department as telephone operators.

Notwithstanding the promulgation of the telephone operator list and the certification of names by the municipal civil service commission, no permanent appointments were made therefrom to the police department. The police commissioner refused to accede to the request of the municipal civil service commission to make appointments from the certified list, and instead referred the matter to the budget director with the explanation that for administrative reasons he preferred to make appointments from the patrolman list rather than from the telephone operator list.

In the budget for 1940–1941, effective July 1, 1940, there had been definitely established 300 positions under the title of telephone operator (male) at $1,200 per annum. On September 17, 1940, apparently in compliance with the police commissioner's request, the budget director issued a certificate modifying the personal schedules in the police department by changing the title of 265 positions from telephone operator (male) at $1,200 to that of telephone operator (police) at the same annual rate. Under this arrangement only 35 of the 300 existing positions of telephone operator (male) would remain theretofore filled by incumbents from the former telephone operator list. The police commissioner retained in the new title the 87 persons previously appointed provisionally from the patrolman list. Shortly thereafter the municipal civil service commission acquiesced in this administrative policy of the police department by approving the payroll of the persons employed under the titles of telephone operator (male) and telephone operator (police).

The Special Term has held that this certification is not shown to have been unreasonable or capricious and that the facts justify the police commissioner in the view that " knowledge of police

work is a most important qualification for a telephone operator in the police department and that the most appropriate list for filling that position is the patrolmen's list."

There can be no doubt that the respondent's purpose in offering the open competitive examination, resulting in the present telephone operator list, was to fill these positions in the police department. Not only was this object expressed in the advertised announcement for the examination, but on March 27, 1940, the president of the municipal civil service commission wrote to an applicant as follows:

" As you know, the vacancies as Telephone Operator in the Police Department will be permanently filled from the Telephone Operator (Male) list which is now being prepared. I know from your letter that you have filed for this position. If you are successful in this examination, therefore, you will receive a permanent appointment, and under our present medical standards, your disability will not disqualify you for that position.

" Because of limited funds, however, we are unable to rate these papers as rapidly as we should wish. Pending the rating of these examination papers, we are employing young men from the police list to fill these jobs provisionally. These appointments are merely temporary, since these young men will soon be called for regular police work. These temporary appointments will terminate as soon as the list for Telephone Operator (Male) is published, and appointments will be made from the list for which you have filed an application."

The official Civil Service Bulletin of June, 1940, also disclosed the existence of 259 provisional telephone operators, concerning whom it was stated: " Telephone Operators are provisionals in a technical sense only. All appointments have been made from the Patrolman Police Department list pending the establishment of the Telephone Operator Grade 1 (Male) list." Funds were appropriated and provision made in the city budget for the fiscal year 1940–1941 for the employment of 300 telephone operators in the police department at $1,200 annually. Again, in the official Civil Service Bulletin of September, 1940, it was stated with respect to provisional telephone operators that: " Eligible list has been certified. Payrolls of provisionals are being certified pending disposition of such list."

We must accordingly assume that when the examination for telephone operator was announced in November, 1939, when the examination was held in February, 1940, when the list was promulgated on August 14, 1940, and again when 120 certifications were made on August 23, 1940, by the municipal civil service commission to the police commissioner, there was need and propriety for such action, and that the commission was then of the

opinion that the telephone operator list was the only "appropriate" list for the position. The persons then certified from the telephone operator list for positions having that title could not be deprived of the right to serve in that capacity by the subsequent action of the respondents.

When the budget for the year 1940–1941 was modified at the request of the police commissioner, the change in title was not accompanied by the addition of any new duties. The telephone operator positions were the same as they were when the candidates were examined and induced to hope for appointment in the police department. The duties performed by those taken from the patrolman list, appointed provisionally, and the duties performed by the civilians from the former telephone operator list are the same now as they were then. The change of title in the circumstances was a meaningless and futile gesture. " The statute cannot be circumvented by labeling the position with another name, for those who had passed the competitive examination and achieved a place on the certified list were by law entitled to constitute those eligible for appointment." (*Spencer* v. *Ryan*, 237 App. Div. 50; affd., 262 N. Y. 600. See, also, *Matter of Mendelson* v. *Finegan*, 168 Misc. 102; affd., 253 App. Div. 709; affd., 278 N. Y. 568.)

As bearing on the expediency of the police commissioner's plan in making provisional appointments from the patrolman list, it appears from his affidavit that none of the probationary patrolmen, graduating in September, 1940, had any telephone operating experience. Previous to appointment they were not tested as telephone operators, nor with reference to the duties, qualifications and experience of such positions. Those on the telephone operator (male) list, on the contrary, were tested with respect to switchboards used in the police stations and also with respect to police department routine. If the plan is to be continued, the present telephone operator list may be rendered nugatory, while persons on the patrolman list continue to be appointed provisionally until they receive permanent appointments as patrolman as soon as they are reached on the patrolman eligible list. The training received by appointees in the civil service subsequent to appointment, to which the police commissioner refers, is no criterion of original fitness; neither does it aid in determining the correct list for the position. If it was considered desirable to discriminate between telephone operators in the police department and telephone operators elsewhere, then the commission should at least have held a competitive examination and created a list for that purpose. The practice now followed results in a system whereby 265 positions of telephone operator in the police department are continually

occupied by provisional appointees serving an apprenticeship pending appointment from the patrolman's list.

Such a practice also results in other complications. When vacancies shall occur in the 35 positions now held by the civilian employees appointed from the former telephone operator list they will necessarily be filled from the telephone operator list more recently promulgated. When vacancies occur, however, among the 265 appointees appointed from the patrolman's list if the existing practice is sustained, they would be filled from persons on the patrolman's list. Accordingly, although all these positions have identical duties and receive the same compensation, they would be filled from two lists having no relation to one another.

The record in the present case contains no unequivocal declaration by the municipal civil service commission that the patrolman list is the only " appropriate " list or that the existing telephone operator list is not " appropriate." It is merely stated in the affidavit of the president of the respondent commission that " at the present time " he regards " the Patrolmen eligibles " as " completely qualified for that purpose." The adoption of this new plan or policy by the police commissioner and the passive acquiescence therein by the municipal civil service commission are not the equivalent of a direct declaration by that agency of the municipal government that the existing telephone operator list is not appropriate for the filling of such positions in the police department. Indeed, such a declaration would be entirely inconsistent with all the acts of the commission to which reference has been made.

Section 14 of the Civil Service Law is controlling on the issue. It provides: " * * * Appointments shall be made to or employment shall be given in all positions in the competitive class that are not filled by promotion, reinstatement, transfer or reduction under the provisions of this chapter, and the rules in pursuance thereof, by appointment from among those graded highest in open competitive examinations conducted by the State or municipal commission, except as herein othereise provided. * * * Appointments shall be made from the eligible list most nearly appropriate for the group in which the position to be filled is classified, and a new list shall be created for a stated position or group of positions only when there is no appropriate list existing from which appointment may be made. No person shall be appointed or employed under any title not appropriate to the duties to be performed, and no person shall be transferred to, or assigned to perform the duties of, any position subject to competitive examination, unless he shall have previously passed an open competitive examination equivalent to that required for such position, or unless he shall have served with fidelity for at least three years in a similar position."

The statute contemplates permanent and not provisional appointments such as have been made in the present case. Moreover, the Rules of the Municipal Civil Service Commission (Rule V, § IX, subd. 6, ¶ [a]) provide: "Whenever there are urgent reasons for filling a vacancy in the Competitive Class and there is no list of persons eligible for appointment after competitive examination, the appointing officer may nominate a person to the Commission for non-competitive examination, and if such nominee shall be certified by the Commission as qualified after such non-competitive examination, he may be appointed provisionally to fill such vacancy until a selection and appointment can be made after competitive examination; but such provisional appointment shall not continue for more than ten days after an appropriate list has been established, nor for a longer period, in any case, than four months; nor shall successive provisional appointments be made to the same position under this provision."

The question of the "most nearly appropriate" list under section 14 of the Civil Service Law only arises when no list having the title of the position to be filled has been created or, having been created, has been exhausted or has expired. In such a case there is necessity to resort to a "most nearly appropriate" list, as in *Matter of Henry Hudson Parkway Authority* v. *Kern* (167 Misc. 699; affd., 255 App. Div. 770) where there was no list with the title of the classified position to be filled (toll collector).

In the present case there was in existence on August 23, 1940, a list identical with the title and duties of the positions to be filled. When that list was promulgated there was no longer any necessity to seek a "most nearly appropriate" list, because there was then in existence only one "appropriate" list. The successful candidates on that list were then entitled to appointment and could not be deprived of that opportunity by the subsequent inconsequential change of designation of 265 of the 300 positions to be filled from telephone operator (male) to telephone operator (police), all of whom performed identical duties. (*Matter of Cornehl* v. *Kern*, 260 App. Div. 35, 39.)

The respondents rely on *Matter of Forman* v. *Kern* (257 App. Div. 946; affd., 282 N. Y. 583) and *Matter of Ward* v. *Kern* (259 App. Div. 717; affd., 284 N. Y. 698) in support of their contention that the court will not substitute its judgment for that of the commission in the determination of the appropriateness of an eligible list for positions in the city service. In those cases there was no existing list having the same title as the position to be filled. In the *Forman* case the position to be filled was industrial survey agent and the commission decided that the bookkeeper list was the

most appropriate. In the *Ward* case the position to be filled was that of investigator and the use of two lists (law clerk-law examiner and patrolman, police department special) was sustained.

In the present case the provisional appointments from the patrolman list should be regarded as mere stop-gaps. They could never be classified even as probationary in the positions to which they were appointed provisionally. (*Matter of Sheridan* v. *Kern*, 255 App. Div. 57.) They could have availed themselves of the opportunity of competing in the examination in which the appellant and others were successful. Having failed to do so, the places they hold provisionally must be surrendered to those who have won that right and have been certified on the eligible list resulting from open competitive examination. (*Matter of Krapp* v. *Kern*, 255 App. Div. 305; affd., 281 N. Y. 617; *Matter of Britt* v. *Kern*, 279 id. 701; *Matter of Ackerman* v. *Kern*, 281 id. 87; *Matter of Abrams* v. *Kern*, Id. 787; *Matter of Kraus* v. *Singstad*, 275 id. 302; *Matter of McCue* v. *Kern*, 257 App. Div. 816.)

The order appealed from should be reversed, with twenty dollars costs and disbursements, and the motion of the petitioner granted.

MARTIN, P. J., and TOWNLEY, J., concur; DORE and COHN, JJ., dissent and vote to affirm.

DORE, J. (dissenting). The question presented is whether the municipal civil service commission in the light of the facts disclosed, including the strong recommendation of the police commissioner of the city of New York who is responsible for the efficiency of the police work in this city, was guilty of an abuse of discretion or bad faith in approving the employment of eligibles from the list of patrolman, police department, in existing positions of telephone operator (police) in the police department.

The position of telephone operator (police) involves the performance of duties that are essentially police duties. The eligibles on the list for telephone operator grade 1 (male) were not tested for their knowledge or proficiency in such police duties. The eligibles from the list of patrolman, however, have the required knowledge of police work in general and the organization of the police department with its rules and procedures which frequently have to be applied in emergencies in the performance of telephone operator switchboard duties in the department.

There can be no question on this record that the municipal civil service commission has approved the patrolman list. It has not only approved the list but certified the payrolls.

In the absence of a substantial showing of illegality, bad faith or arbitrary or capricious action, the court should not interfere

with the determination of the municipal civil service commission concurring with the responsible head of the police department and the budget director. The court is not concluded by the mere title but can look behind it to ascertain what essential duties are required to be performed under the title in arriving at its decision. The differences which, in fact, exist between the work of a telephone operator in an ordinary city department and the work of a telephone operator in the police department are too obvious to require any extended reference. The record establishes that a large part of the duties of a police department telephone operator involves knowledge and training in police matters especially when located in regular precinct station houses of the department. The dangers flowing from ignorance of police regulations and routine, especially in emergencies, far outweigh any danger arising from an incomplete knowledge of the simple technique of telephone switchboard operation.

There is nothing in the record to show that either the commission or the police commissioner acted arbitrarily, or in bad faith. On the contrary, the record showed that their action is characterized by the utmost good faith and supported by common sense and good judgment. In the interest of the efficiency of the important work of the police department, their action should not be disturbed. Especially is this true in these days of officially declared public emergencies of the first magnitude. To act otherwise is merely to perpetuate an original error.

The order appealed from should be affirmed, with costs.

COHN, J., concurs.

Order reversed, with twenty dollars costs and disbursements, and motion granted. Settle order on notice.