In the Matter of ALEXANDER MURRAY et al., on Behalf of Themselves and All Others Similarly Situated, Appellants, against JOSEPH A. McNAMARA et al., Constituting the Municipal Civil Service Commission of the City of New York, Respondents.

Argued April 10, 1951; decided July 11, 1951.

*Charles Haydon* for appellants. I. The certification and appointment as paver, of persons without the required experience, constituted an unlawful preference, a violation of the commission's rules, and was illegal. (*Matter of Mendelson* v. *Finegan,* 168 Misc. 102, 253 App. Div. 709, 278 N. Y. 568; *Railway Mail Assn.* v. *Murphy,* 180 Misc. 868; *People ex rel. Lee* v. *Gleason,* 32 App. Div. 357; *Matter of Ackerman* v. *Kern,* 281 N. Y. 87; *Matter of Clifford* v. *Kern,* 171 Misc. 512; *Matter of Barthelmess* v. *Cukor,* 231 N. Y. 435; *Matter of Thacher* v. *Catherwood,* 263 App. Div. 484; *Matter of Perpente* v. *Moss,* 293 N. Y. 325; *Matter of Kaney* v. *New York State Civil Service Comm.,* 190 Misc. 944, 273 App. Div. 1054, 298 N. Y. 707.) II. Appointments from the list for the position of rammer were forbidden while the pavers' list existed. (*People ex rel. Finnegan* v. *McBride,* 104 Misc. 153; *Matter of Henry Hudson Parkway Authority* v. *Kern,* 167 Misc. 699, 255 App. Div. 770; *People ex rel. Sweeney* v. *Rice,* 279 N. Y. 70; *Story* v. *Craig,* 231 N. Y. 33.) III. The Constitution and the Civil Service Law prevent promotion of persons in the labor class, and the particular laborers sought to be promoted to rammer did not have the necessary preliminary requirements. (*Matter of Mendelson* v. *Kern,* 278 N. Y. 568; *Matter of Cornehl* v. *Kern,* 260 App. Div. 35, 285 N. Y. 777; *Walters* v. *City of New York,* 119 App. Div. 464; *Matter of Chiaravalle* v. *Kern,* 285 N. Y. 778.)

*John P. McGrath, Corporation Counsel* (*Andrew Bellanca* and *Seymour B. Quel* of counsel), for respondents. I. The commission's determination that persons on the paver list were qualified and possessed the preliminary minimum experience requirements for the paver examination was not illegal or arbitrary or beyond the scope of its discretion, but finds support in the record. The requirements of five years' experience as a paver

or a satisfactory equivalent of a nature to qualify for the duties of the position was reasonable and definite. (*People ex rel. Moriarty* v. *Creelman*, 206 N. Y. 570; *Matter of Thomas* v. *Kern*, 280 N. Y. 236; *Matter of Strauss* v. *Hannig*, 256 App. Div. 662, 281 N. Y. 612; *Matter of Laverty* v. *Finegan*, 249 App. Div. 411, 275 N. Y. 555; *Matter of Gauthier* v. *Rice*, 246 App. Div. 179.) II. The Constitution, the Civil Service Law, and the rules of the commission require, where practicable, the filling of vacancies in the civil service by promotion examinations from among persons holding positions in a lower grade or class — including the labor class — in the department where the vacancy exists, notwithstanding the existence of an open competitive list for the same or related positions. The promotion examination given to laborers in the borough presidents' offices for the position of rammer in the same office was accordingly proper. (*Hurley* v. *Board of Educ. of City of N. Y.*, 270 N. Y. 275; *Matter of Cornehl* v. *Kern*, 260 App. Div. 35, 285 N. Y. 777; *Matter of Pollak* v. *Conway*, 276 App. Div. 435; *Matter of Ward* v. *Kern*, 259 App. Div. 717, 284 N. Y. 698; *Matter of Forman* v. *Kern*, 257 App. Div. 946, 282 N. Y. 583; *Matter of Lennon* v. *Delaney*, 263 App. Div. 568; *Matter of Social Investigator Eligibles Assn.* v. *Taylor*, 268 N. Y. 233; *Wood* v. *City of New York*, 274 N. Y. 155.)

FROESSEL, J. Petitioners-appellants, two of the persons who passed an open competitive examination for the position of paver, seek, in this article 78 proceeding, an order directing respondents, who constitute the Municipal Civil Service Commission of the City of New York, (1) to remove certain persons from the paver list on the ground that such persons did not have five years' satisfactory experience as paver or a satisfactory equivalent, and to nullify all certifications of such persons for the position; (2) to nullify all proceedings had with reference to a promotion examination for rammer; and (3) to certify as eligible for the position of rammer the list of eligibles for the position of paver as amended by the removal of the assertedly unqualified persons.

We agree with both lower courts that appellants did not make a sufficient showing of unreasonable, arbitrary or capricious conduct by respondents as to the paver examination and the resultant eligible list. The requirement of a " satisfactory

equivalent '' in lieu of five years' satisfactory experience as a paver is not, under the circumstances here presented, so vague and indefinite as to be unconstitutional. We have not only recognized the concept of satisfactory equivalents, but have held that requirements which exclude this concept may be illegal (see *Matter of Cowen* v. *Reavy*, 283 N. Y. 232, 238).

It is well settled by a long line of decisions in this court that '' In the absence of some express limitation the action of the commission in fixing such tests must stand, unless it is so clearly irrelevant and unreasonable as to be palpably indefensible and improper. If any fair, reasonable argument may be made to sustain the action the courts should not interfere, even though they may differ from the commission as to its advisability '' (*People ex rel. Moriarty* v. *Creelman*, 206 N. Y. 570, 576; *Matter of Thomas* v. *Kern*, 280 N. Y. 236; *Matter of Strauss* v. *Hannig*, 256 App. Div. 662, affd. 281 N. Y. 612; *Matter of Laverty* v. *Finegan*, 249 App. Div. 411, affd. 275 N. Y. 555; *Matter of Cowen* v. *Reavy*, *supra*, and cases cited therein at p. 237).

We are, however, of the view that respondents acted contrary to law, albeit in good faith, in giving the rammer examination as a *promotion* examination open to permanent employees in the offices of the presidents of the boroughs of Manhattan, Bronx, Brooklyn and Queens who were employed in the position of '' Laborer ''. Section 16 of the Civil Service Law provides:

'' 1. *Filling vacancies by promotion.* Vacancies in positions in the competitive class shall be filled, as far as practicable, by promotion from among persons holding positions in a lower grade in the department in which the vacancy exists. * * *

'' 8. *Limitation upon promotion, transfer or reinstatement.* No promotion, transfer or reinstatement shall be made from a position in one class to a position in another class unless the same be specifically authorized by the state or municipal commission, nor shall a person be promoted or transferred to a position for original entrance to which there is required by this chapter or the rules an examination involving essential tests or qualifications different from or higher than those required for original entrance to the position held by such person, unless he shall have passed the examination and is eligible for appointment to such higher position.'' (Italics supplied.)

There are four classes over which respondents have jurisdiction: exempt, competitive, noncompetitive and labor (Civil Service Law, § 12; N. Y. City Mun. Civ. Serv. Comm. Rules [1947], rule I, subd. 1, p. 1). The position of rammer is classified by respondents in " The Skilled Craftsman and Operative Service " part of the competitive class (Rules, rule X, part 38, pp. 88, 90–91). The position of laborer is an entirely different class, namely, the labor class, which is wholly ungraded (Rules, rule X, p. 119). Within the labor class are twenty-five different types of labor, including bakers, butchers, farmers, and a variety of other occupations; those workers in the list who may be found in a borough president's office are cleaners (men and women), laborers, porters, sewer cleaners, and window cleaners; there is no reference to pavers or rammers.

As we read the pertinent portion of section 16 above quoted, promotion examinations may be held only where the persons sought to be promoted have passed an open competitive examination for a lower grade in the type of work involved in the position to which it is sought to promote them, and paragraph 11 of section X of rule V (Rules, p. 24), which was apparently designed to implement the statute, but used the words " lower but corresponding character " instead of " lower grade ", as the statute prescribes, may not be read to the contrary. (*Matter of Mendelson* v. *Finegan,* 168 Misc. 102, affd. 253 App. Div. 709, affd. 278 N. Y. 568; Weissberg, Civil Service Rights [1950], p. 47, § 72; Collier on Civil Service, pp. 99–100; Chief Judge POUND's construction as a member of the State Civil Service Commission (N. Y. Assem. Doc., 1902, No. 56, p. 263 *et seq.*)

In the *Mendelson* case (*supra*), the promotions in question were from law clerk to law assistant, all within the same department and the same class — competitive — and we affirmed the courts below in holding that section 16 of the Civil Service Law cannot be construed to permit such promotions where the persons sought to be promoted had not on original entrance into the service taken a competitive examination which in any way tested their skill for the type of work to which it was sought to promote them. Here the same principle applies, but with greater force, for the laborers never took an open competitive examination which even remotely tested their skill as rammers—indeed, their

occupational designations indicate the nature of their work and qualifications; and, since the position of rammer is classified in a skilled part of the competitive class, whereas the position of laborer is in a wholly different class and ungraded, '' we must accept as a fact that the examination for these positions involves essential tests and qualifications differing from each other.'' (*Matter of O'Connell* v. *Clark,* 200 App. Div. 606, 609.) '' It has been the generally accepted doctrine throughout the State that as to the positions of laborers * * * it was not practicable to employ competitive examinations in order to determine fitness '' (*People ex rel. Langdon* v. *Dalton,* 49 App. Div. 71, 74, affd. 163 N. Y. 556). *Matter of Williams* v. *Morton* (297 N. Y. 328), cited by Judge FULD, is not helpful to his position, for there we enjoined the assignment of a physician to a new post in the medical service at almost twice his then salary *without any examination whatsoever.*

If by the *Mendelson* decision graded law clerks who took a competitive examination for that position were not eligible for promotion to graded law assistants, how can we now hold that ungraded laborers who never took any open competitive examination at all are eligible for promotion to rammers, which the Civil Service Commission places in the Skilled Craftsman and Operative Service, and which position pays one and one half-times, more or less, the compensation fixed for laborers? To do so would require us to overrule the *Mendelson* case. Accordingly, we conclude that the laborers were not eligible for promotion to rammer. This is not to say that they may not qualify, but they must do so by proving their capabilities in open competition with other applicants.

We are not unmindful of the policy manifested in subdivision 1 of section 16 of the Civil Service Law of filling vacancies '' as far as practicable, by promotion from among persons holding positions in a lower grade ''; and of the wisdom of that policy in tending to raise the morale of government employees and thus promote efficiency. However, under our Constitution, article V, section 6, the right to appointment is entitled to the same protection as the right to promotion, and under the statute (Civil Service Law, § 16, subd. 8), promotion examinations may be held only where the employees sought to be promoted have

passed an open competitive examination for a lower grade in the type of work involved in the position to which promotion is sought.

Since no list for rammer has been legally created, "there is necessity to resort to a 'most nearly appropriate' list" (*Matter of Friend* v. *Valentine*, 261 App. Div. 163, 170, affd. 285 N. Y. 764, motion for reargument denied 285 N. Y. 853; Civil Service Law, § 14, subd. 8; see, also, *Matter of Ackerman* v. *Kern*, 281 N. Y. 87). Upon this record, it is clear that the paver list is the existing eligible list most nearly appropriate from which to make appointments to rammer, and therefore appointments to that position should have been made from it, and should continue to be made from it, at least until a proper rammer's list is promulgated.

Respondents argue the Statute of Limitations and laches with respect to appellants' claim seeking nullification of the rammer examination. However, the rammer list was first promulgated on March 22, 1949, and until respondents made the first appointment therefrom on May 1, 1949, appellants were not aggrieved, for the mere promulgation of the rammer list and the holding of the examination at earlier dates had produced no harm to them (see *Matter of Rumack* v. *McNamara*, 195 Misc. 84, 88, 89, affd. 275 App. Div. 805, motion for leave to appeal denied 299 N. Y. 800; *Matter of Thomas* v. *Kern*, 280 N. Y. 236, 244, *supra*; *Matter of O'Connell* v. *Kern*, 287 N. Y. 297, 301). Inasmuch as the present proceeding was instituted on June 3, 1949, it was timely brought, and appellants were not guilty of laches.

It follows that Special Term was correct in refusing to remove any eligibles from the paver list, in ordering the nullification of all proceedings had with reference to the promotion examination for rammer, and in directing that respondents certify as eligible for the position of rammer only persons appearing on the paver list, but its order should be modified as hereinafter provided.

The order of the Appellate Division, insofar as it reverses the order of Special Term, should be reversed and otherwise affirmed, and the order of Special Term, insofar as reversed by the order of the Appellate Division, should be modified by adding to its fifth ordering clause before the semicolon the words:

" until a proper rammers' list is promulgated ", and, as so modified, affirmed, with one bill of costs to the appellants.

FULD, J. (dissenting). The Municipal Civil Service Commission of the City of New York determined that a laborer, who, among his other duties, assists rammers and pavers in the construction and repair of city streets, is eligible for promotion to the position of rammer. I believe that determination — which has been upheld by the Appellate Division — eminently correct. I cannot agree with the decision, now being made by the court, that either the Constitution or the Civil Service Law makes impossible the promotion of an employee in the labor class to a position in the competitive class.

The sole test for promotion as prescribed by the Constitution of this state (art. V, § 6) is the practicability of such promotion, and not the classification and grading of the positions involved, for differences in classification or grading do not establish that promotion is not practicable. The legislature has implemented the constitutional provision by providing that " Vacancies in positions in the competitive class shall be filled, as far as practicable, by promotion from among persons holding positions in a lower grade in the department in which the vacancy exists " (Civil Service Law, § 16, subd. 1). That provision must be read together with two other subdivisions of the same section: " For the purposes of this section ", subdivision 7 specifically recites, " an increase in the salary or other compensation of any person holding an office or position * * * beyond the limit fixed for the grade in which such office or position is classified, shall be deemed a promotion ", and subdivision 8 expressly imposes certain limitations *upon promotion* " *from a position in one class to a position in another class* ".

The rules of the Municipal Civil Service Commission of the City of New York establish grades for some positions in the competitive class, but not for positions in the labor class. The position of rammer is classified in the competitive class in Part 38, entitled " The Skilled Craftsman and Operative Service ", which provides that " The compensation at the grades of positions in this part is fixed at the prevailing rate of wages for each

of them as determined by law ''— that is, by the procedure prescribed in section 220 of the Labor Law. It is not disputed that the laborer's compensation is less than that of rammer.

The first question, therefore, that we must resolve is whether the position of laborer is '' in a lower grade '' than that of rammer — and the answer seems clear. The commission has defined '' grade '' as meaning '' the order or standing of a position with reference to the compensation attaching to it '' (N. Y. City Mun. Civ. Serv. Comm. Rules [1947], rule I, subd. 13). By that definition, the position of laborer is — because the pay is less — necessarily in a lower grade than that of rammer.

Where positions involving the same general type of work can be differentiated on the basis of amount of skill, responsibility and compensation, they are deemed to be in different grades for promotion purposes, even in the absence of formal grades estab-lished by civil service commissions. Our decision in *Matter of Williams* v. *Morton* (297 N. Y. 328) implicitly holds that a graded position for which no maximum salary is prescribed — in effect, an ungraded position as to maximum salary — is, nevertheless, for purposes of promotion, in a lower grade than a newly created supervisory position. That case involved an examining physician, Grade 4, salary range '' $3,000 per annum and over.'' Grade 4 was the highest competitive grade of the medical serv-ice. An employee in Grade 4, salary $4,000 a year for part-time service, was detailed or assigned to take charge of the medical staff at $7,500 a year. In characterizing such action as illegal, Chief Judge Loughran, writing for the court, declared that '' the State Constitution (art. V, § 6) * * * clearly requires all promotions as well as all appointments to be made for merit and fitness after determination thereof by competitive examination, unless such an examination would be futile '' (p. 333), and went on to say '' Such an advance in income and in professional responsibility and prestige is certainly a ' promotion ' in every fair sense of that word '' (p. 334).

Nor does anything turn upon the fact that the *Williams* case involved a promotion from one position in the competi-tive class to another position in the competitive class. If posi-tions in the competitive class may be in grades relative to each other for promotion purposes — even in the absence of formal

grading by civil service commissions (see, also, *Story* v. *Craig*, 231 N. Y. 33, 38–39) — there is no reason why positions in the labor class may not be similarly regarded for such promotion purposes. Certainly, the commission did not regard its failure to establish formal grades for positions in the labor class as a bar to the promotion of laborers to the position of rammer in the competitive class, for it has provided for such promotion in its rules, despite the absence of grades for positions in the labor class.

Indisputably, the legislature, by enacting section 16, subdivision 8, of the Civil Service Law, contemplated promotion " from a position in one class to a position in another class ", for that is the very language of the statute itself. However, to effect such a promotion, it is specified, two conditions must be met.

The first condition is that such a promotion must be " specifically authorized by the state or municipal commission ". That specification was satisfied in the case before us. Here, by virtue of paragraph 11 of section X of rule V of the Rules of the Municipal Civil Service Commission — accorded the force and effect of law (Civil Service Law, § 6) — the commission was empowered to " *extend eligibility for promotion to positions in the Competitive Class to employees in the Labor Class* who have for three years next immediately preceding the examination performed work of a lower but corresponding character in such class." While that provision does not explicitly sanction the promotion of laborers to rammers, the commission's action in declaring laborers eligible to compete in the examination for promotion to rammer constitutes the essential authorization for the promotion of any laborer who passes the examination and is subsequently certified for promotion.

The second condition — which must be satisfied before a promotion from a position in one class to a position in another class is sanctioned — is that no person shall " be promoted or transferred to a position for original entrance to which there is required by this chapter or the rules an examination involving essential tests or qualifications different from or higher than those required for original entrance to the position held by such person, unless he *shall have passed the examination* and is eligi-

ble for appointment to such higher position." (Emphasis supplied.)

The words, " passed the examination ", refer to the examination taken by the employee whereby he qualified for his original appointment, as both Chief Judge POUND, while a member of the State Civil Service Commission (N. Y. Assem. Doc. [1902], No. 56, p. 263 *et seq.*), and Collier, in his work on Civil Service (pp. 99–100), have stated. Judge POUND, for instance, wrote that " the words ' passed the examination ' refer to positions in the non-competitive class," (p. 264) clearly envisaging thereby the qualifying noncompetitive examination which is administered to applicants for appointment in the noncompetitive class. (See *Matter of Merriweather* v. *Roberts*, 268 N. Y. 12; *Matter of Ottinger* v. *Civil Service Comm.*, 240 N. Y. 435.) There is, of course, no doubt that qualifying noncompetitive examinations may be, and usually are, administered to applicants for appointment in the labor class. (Cf. *Burke* v. *Holtzmann*, 110 App. Div. 564, 566; *People ex rel. Langdon* v. *Dalton,* 49 App. Div. 71, 74, affd. 163 N. Y. 556; *Matter of Angelora* v. *Kern,* 177 Misc. 803, 804, affd. 262 App. Div. 1018.) Thus, in the *Angelora* case (*supra,* 177 Misc. 803, affd. 262 App. Div. 1018), applicants for the position of auto truck driver in the labor class were given a qualifying noncompetitive examination which consisted of a medical, physical, practical and literary test. It follows, therefore, that the words, " passed the examination ", apply to employees in the labor class as well as to employees in the noncompetitive class. Consequently, an employee in the labor class has " passed the examination " prescribed by the statute and may qualify for promotion in the competitive class, provided that he " is eligible for appointment to such higher position." Such eligibility is shown by passing an examination for the higher position and by attaining a place upon the eligible list.

The balance of the subdivision — " nor shall a person be *promoted or transferred* to a position for original entrance to which there is required * * * an examination involving essential tests or qualifications *different from or higher than* those required for original entrance to the position held by such person " — further limits promotions to situations where the

original examination and the promotion examination both involve similar essential tests and qualifications, although the promotion examination requires higher tests or qualifications. Transfers, however, are limited to situations where the essential tests or qualifications are similar but not higher. Every promotion, by definition, involves essential tests and qualifications higher than those prescribed for original appointment to a lower position with similar duties, whereas a transfer contemplates a change from one position to another involving similar but not higher essential tests, qualifications and duties. This difference between promotion and transfer precludes the application of identical limitations to both, as the legislature recognized by speaking in the disjunctive of a person " promoted **or** transferred " and of " essential tests or qualifications different from **or** higher than those prescribed for original entrance to the position held by such person ". Thus, language confirms what reason requires: a promotion is prohibited only if it involves " different " tests or qualifications. Such a construction of the statute permits promotions to positions involving similar but higher essential tests and qualifications, while a contrary construction would render all promotions impossible, since, as we have seen, every promotion, by definition, involves higher essential tests and qualifications than those prescribed for a lower position with similar duties.

The determinative factor, then, is whether the two positions — the one occupied and the one to which promotion is sought — involve essentially similar tests and qualifications, and not whether they are in the same or different classifications. That this is so is borne out and confirmed by the reasoning in *Matter of Mendelson* v. *Finegan* (168 Misc. 102, affd. 253 App. Div. 709, affd. 278 N. Y. 568), the very case relied upon by Judge FROESSEL. The promotion examination in that case was held improper because the original examination for the " lower " position of clerk did not test for the qualifications that were in any way similar to those prescribed for the " higher " position of law assistant. More specifically, the original examination for clerk required no legal education and did not test for capacity to perform any legal duties whatever, while the examination for law assistant not only required legal education, but tested for capacity to perform legal duties,

The fact that the position of laborer is classified in the labor class and ungraded, while the position of rammer is classified in the competitive class, does not require us to accept as a fact that the examination for these positions involved essential tests and qualifications different from each other. *Matter of O'Connell* v. *Clark* (200 App. Div. 606) — which Judge FROESSEL cites — is not to the contrary, for the court, after observing that differences in classification required an assumption of differences in the essential tests and qualification, went on to point out *actual differences* in the physical tests, age limitations and duties of the positions there involved. If a difference in classification raises a conclusive presumption of differences in essential tests and qualifications, then, of course, there could never be any promotion from a position in the labor class to a position in the competitive class. And, if that were so, the statutory provision limiting promotion '' from a position in one class to a position in another class '' (Civil Service Law, § 16, subd. 8), would, quite obviously, be not only superfluous but meaningless. It seems to me that comparison of tests and of qualifications for promotion to a position in the competitive class may be made in any case, and that promotion should be allowed whenever such comparison shows similarity in essential tests and qualifications, despite differences in classification or grading. (Cf. *Kelty* v. *Kaplan,* 205 App. Div. 487.)

Our query, therefore, must always be whether the examination given to the applicant and passed by him in qualifying for his current position tested for the same or similar qualifications that would be demanded of one filling the position to which promotion is sought. Similarity of work and qualifications, not identity of classification, is the standard and criterion.

Upon such a construction of the statute, the question arises whether the qualifying noncompetitive examination for a laborer involved essential tests and qualifications similar to — albeit lower than — those prescribed for the position of rammer. The commission determined this question in the affirmative. In the absence of any showing that the essential tests and qualifications for the positions of laborer and rammer are different and wholly unrelated, a court should not assume that they are different, particularly since the commission implicitly found

them to be similar under its rule V, section X, paragraph 11 — which, as noted above, provides for promotions from the labor to the competitive class of employees who had been performing " work of a lower but corresponding character ".

In my view, therefore, petitioners' application to annul the rammer promotion examination and the list resulting therefrom was properly denied by the Appellate Division, and its order should in all respects be affirmed.

LEWIS, CONWAY and DYE, JJ., concur with FROESSEL, J.; FULD, J., dissents in opinion in which LOUGHRAN, Ch. J., and DESMOND, J., concur.

Ordered accordingly. [See 303 N. Y. 804.]