Frank Del Vecchio, J.
This is an article 78 proceeding for an order directing respondent to accept petitioner’s application for examination for promotion to Fire Lieutenant, to be held on November 21, 1959.
It appears without dispute that petitioner was appointed to the Fire Department of the City of Syracuse on September 1, 1953 and holds the rank of fireman; that periodically in the absence of superior officers he has held the rank of Acting Lieutenant in charge of a fire company; that when appointed he was a resident of the City of Syracuse but soon thereafter moved from the city and became and still is a resident of the Town of Onondaga.
On September 18, 1959 respondent published notices of promotional examination for the position of Fire Lieutenant and *306 as one of the qualifications for making application to take the examination respondent required that an applicant must have been a legal resident of the City of Syracuse for at least two years immediately preceding the date of examination. (Actually, the notice specified “date of ordering of examination ”; however, both parties agree that this referred to the date of examination and the court’s decision is predicated on this assumption. The result would not be different if the words were literally construed.)
Petitioner contends that this residence requirement is arbitrary, capricious, unreasonable and illegal and that respondent has no authority to establish the same. Respondent, on the other hand, denies that the requirement is arbitrary, capricious or unreasonable and avers that it was duly adopted and approved by the Onondaga County Civil Service Commission on September 18, 1959 pursuant to the provisions of section 20 of the Civil Service Law; that such rules have the force and effect ox law; and that, since petitioner does not meet the residence requirement, he cannot legally qualify for or compete in the promotional examination.
Respondent also sets up as an affirmative answer petitioner’s failure to make or allege a demand by him to file an application and a subsequent refusal thereof by respondent, which it is claimed should defeat the present proceeding. This court is of the opinion however that petitioner was not required to file, or to make a demand to file, when it was apparent and he knew from the published qualifications that his application would not be accepted. The law does not require the doing of a useless act. Petitioner was aggrieved the moment respondent adopted and published notice of the requirement that candidates must have been legal residents of the city for two years preceding the date of examination. In these circumstances, it was not necessary for bim to make a demand and await a refusal before bringing this proceeding. (22 Carmody-Wait, New York Practice, p. 378.) The case cited by respondent (Matter of Glencove Shopping Center v. Carozzi, 8 Misc 2d 247) is distinguishable. There the respondent had not taken any official, affirmative action by which petitioner was aggrieved.
Prior to July 7, 1958 section 224 of the Charter of the City of Syracuse provided that all members of the Fire Department of said city were required to be residents of the city for at least two years next preceding their appointment. For a number of years the Public Officers Law also had contained a requirement which in effect compelled firemen to live within the city *307 when they wore appointed. In 1958 however the Legislature enacted subdivision 4 of section 3 of the Public Officers Law which relieved from the residence requirement of that statute city firemen, other than paid officers. Following removal of this restriction by the State, and to encourage the recruitment of firemen, the City of Syracuse Common Council did, on July 7, 1958, amend section 224 of the charter to permit firemen, other than paid officers, to reside outside the city but within the County of Onondaga. In view of the language of the 1958 amendment to the Public Officers Law, which retained the Statewide residence requirement as to paid fire officers, the Syracuse Common Council did not have the power effectively to relieve officers of a residence requirement, at least as to the time of appointment, and it did not attempt to extend the privilege of nonresidence to paid officers.
In 1959 the Legislature again amended section 3 of the Public Officers Law by adopting subdivision 6 authorizing municipalities to waive the residence requirement as to paid officers of a fire department, except chief, deputy chief or assistant chief. It does not appear that the Syracuse Common Council has acted to extend such waiver as of the date of this motion. In his papers petitioner erroneously contends that the 1958 amendment to section 224 of the City Charter was adopted pursuant to Public Officers Law (§3, subd. 6) and that it therefore waives the city residence requirement for both firemen and paid officers (other than chief, deputy or assistant chief). It is apparent however, from the dates of the enactments, that the charter amendment of July 7, 1958 did not, and could not, extend the privilege of nonresidence to paid officers.
Petitioner must have realized this fact because at the oral argument of the motion he stated that, even though an officer, such as a lieutenant, must be a resident of the city at least two years preceding appointment, this would be no basis for excluding petitioner from the examination, since, inasmuch as the appointment list published after the examination is valid for two years, any prospective candidate for promotion might move into the city at any time up to the publication of the list and still fulfill the requirement of two years residence prior to appointment. It is only the stricter requirement promulgated by the respondent Civil Service Commission, demanding residence in the city for two years prior to the date of examination which can be the basis for a refusal of petitioner’s application for admission to the promotional examination. This requirement, which mandates extended residence in the city prior to the *308 examination, as opposed to the date of appointment as specified in the charter provision, petitioner claims is arbitrary, capricious and unreasonable.
There can be no question of the authority of the Civil Service Commission to make rules and regulations regarding examinations and, in so doing, the qualifications for candidates adopted by the commission may be stricter than those provided by the city charter for appointment to a particular office. (Matter of Walsh v. Watson, 198 Misc. 643.) Such rules have the force and effect of law and the courts may not interfere with them unless they are arbitrary, capricious or unreasonable. (Matter of Murray v. McNamara, 303 N. Y. 140, 144; Matter of Wirzberger v. Watson, 305 N. Y. 507, 513.) Action of the commission will however be examined to determine whether there is a reasonable basis therefor (People ex rel. Sweeney v. Rice, 279 N. Y. 70; Matter of Vegas v. Schechter, 13 Misc 2d 265).
Petitioner points out that many firemen now residing in the City of Syracuse are eligible to make application for the examination of November 21st and, if he is prevented from making application, he will be denied the right to compete with firemen of the same rank for promotion to Fire Lieutenant.
The underlying principle of the civil service system may be readily ascertained from the New York State Constitution and the Civil Service Law, both of which make it apparent that appointments and promotions within the civil service of the State and of the civil divisions thereof are to be made according to merit and fitness, insofar as practicable by selection from among those graded highest through competitive examination, with a view to obtaining those persons best qualified to perform the duties of the positions. (N. Y. Const., art Y, § 6; Civil Service Law, §§ 44, 52, subd. 4.) This principle presupposes an equal opportunity for securing appointment or promotion to all those with the necessary qualifications relative to their ability to do the job.
It seems to this court that the requirement of two years’ city residence prior to examination sought to be enforced by the respondent will frustrate the principles just discussed and that there is no benefit either to the commission or to the city which justifies its existence.
Respondent argues that the requirement of city residence prior to examination was motivated by a desire to have officers of the Fire Department immediately available in the event of an extreme emergency such as a conflagration within the confines of the city. Certainly the requirement in question — relating as it does to residence prior to the date of examination — does not *309 accomplish this purpose. It is only the requirement of the city charter which assures that Fire Department officers will reside within the city limits. The requirement which respondent has adopted and seeks now to enforce is powerless to affect an officer’s place of residence except for a two-year period prior to examination which, as to candidates for the Fire Lieutenant’s examination, is a period when they are not officers and when the Syracuse Common Council has specifically provided that they may live outside the city.
Respondent also cites, as a ground for denying the relief requested, subdivision 3 of rule XV adopted by it on January 1, 1955, which in effect requires one year’s residence in the city for admission to a promotional examination in the Fire Department. Again, it is urged that the desirability of having public officers reside in the political subdivision where they are employed is the basis for the residence requirement. What has been said above however applies with equal force to this rule, which is again directed to the period before examination. Furthermore, subdivision 3 of rule XV was adopted at a time when the Public Officers Law made residence within the city mandatory for all city firemen, whatever their rank. Now that there has been a change in this philosophy, reflected in the action of both the State and municipal legislative bodies, respondent’s rule has become outmoded and, when applied to county residents seeking entrance to the promotional examination for the post of Fire Lieutenant, is arbitrary, capricious and unreasonable.
This court is of the opinion that the principle and spirit of the civil service system requires that all firemen, otherwise qualified, whether they live in the city or in the county, should be eligible to take the promotional examination and that they should be ranked according to their fitness as determined by competitive examination for possible appointment to vacancies in the office of Fire Lieutenant. The question whether one who has successfully completed the examination has also fulfilled the residence requirement prescribed by the city charter can only be determined at the time of appointment. However each should be extended the opportunity to meet this qualification if he is able. The requirements of respondent Civil Service Commission with respect to residence within the city prior to examination, as contained in the notice of the examination to be held November 21,1959 and in subdivision 6 of rule XV, are arbitrary, capricious, unreasonable and illegal as applied to petitioner herein.
Respondent also claims that petitioner is not equitably entitled to the relief sought because he moved from the city shortly *310 after Ms appointment as fireman. Since petitioner states that tMs was done with the knowledge and approval of his superior officer and since his residence outside the city is certainly proper at this time, the court does not feel that this is a sufficient ground to deny him the right to take the promotional examination.
The petition is granted and respondent is directed to accept petitioner’s application for the examination for promotion to Fire Lieutenant to be held November 21, 1959. In view of this determination it is not necessary to consider the request for an order restraining respondent from conducting the scheduled examination until decision of this proceeding. Prepare order.