A. Franklin Mahoney, J.
Petitioners, 45 teachers and vocational instructors employed at the Elmira Correctional Facility of the Department of Correctional Services, have commenced two CPLR article 78 proceedings against the New York State Civil Service Commission attacking two .separate and distinct determinations of that body. The first article' 78 seeks to annul a determination by the respondent confirming the action of the Director of Classification and ¡Compensation in establishing a career ladder for all State employees in the professional levels of the institutional education series, which includes the individual petitioners. The second review seeks a reversal of the respondent’s confirmation of the action of the Director of Classification and 'Compensation in denying an application by the Civil Service Employees Association to upgrade salaries of all civilian employees of the Department of Correctional .Services because such employment is unduly hazardous.
These two proceedings were consolidated by order, dated December 14,1973.
A fair and sympathetic reading of petitioners’ show cause .orders, supporting papers and antiexed exhibits in each of the consolidated proceedings leads to the conclusion that the basic underlying complaint is that their duties as nonuniformed, civilian employees of the State correctional system, as distinguished from uniformed, quasi-military employees, are so fraught with danger and hazard that they should be upgraded in title and in salary to the end that a career ladder be established for them distinct and separate from that for their uniformed brethen.
However, in order to individualize the proceedings, consideration will first be given to the article 78 proceeding challenging the determination of respondent, dated March 21, 1973, confirming the establishment of a career ladder for all teachers and vocational instructors. The allegations of hazardous duty set forth in petitioners’ papers in this proceeding will be dealt with in the second article 78 review.
*532 I
The career ladder established by the Director of Classification and Compensation, effective November 12, 1970, and approved by the Director of the Budget and confirmed by the respondent, in substance, abolished the titles of Institution Teacher, Grade 12 and Senior Institution Teacher, Grade 15 and substituted new titles as follows: Teacher I, Grade 12; Teacher II, Grade 13; Teacher III, Grade 15 and Teacher IV, Grade 17. Further, the career ladder as adopted placed incumbents, including petitioners, in the appropriate title based on his personal qualifications. Since the new titles in the proposed career ladder affected employees in more than one State agency, all agencies employing individuals in the teachers series, including petitioners, were invited to and did submit their views to the Director of Classification and Compensation who is charged with the responsibility of job and position classification, reclassification, allocation or reallocation by section 121 of the Civil Service Law. Specifically, hqwever, subdivision 5 of section 121 of the Civil Service Law, in pertinent part, states: “ Career Ladders. The director of the, classification and compensation division may, in order to implement a plan for the progressive advancement of employees in an occupational group # * reclassify the positions of the incumbents who meet the prescribed qualifications to titles allocated to higher salary grades. The advancement of an incumbent pursuant to this subdivision is not, and is not to be deemed, a reallocation. ’ ’ This cited subdivision 5 is singularly important with respect to the argument advanced by petitioners that they have been aggrieved by respondent’s confirmation of a reclassification plan when it should have acted to the contrary because reallocation rather than reclassification is the only just, right and equitable response to their complaint. In fact, it can fairly be said that the legislative intent in amending section 121 of the Civil Service Law by adding subdivision 5 (L. 1971, ch. 907, §1) was to remove the possibility of judicial interpretation that reallocation rather than reclassification was the proper method to carry out the State’s policy as enunciated in section 115 of the Civil Service Law 1 ‘ to reward merit and to insure to the people and the taxpayers * * * the highest return in services for the necessary costs of government ”. Reallocation of titles in a career ladder would make it mandatory to advance all employees in the title or class regardless of merit or worth. Reclassification, on the other hand, would only advance upward those incumbents, such as petitioners, possessing the prescribed qualifications.
*533 Petitioners, therefore, cannot be heard to complain that respondent erred, or acted arbitrarily and capriciously in confirming a career ladder plan based on reclassification rather than reallocation. The Director of Classification and Compensation acted pursuant to statutory mandate and if he acted fairly, the confirmation of his work product cannot be judicially annulled.
In arriving at his career ladder reclassification plan the Director acted in response to an application of the Department of Mental Hygiene, dated January 26, 1970, made pursuant to subdivision 1 of section 120 of the Civil Service Law. Since the positions and titles to be reviewed existed in more than one State agency, all agencies to be affected were invited to participate and present their recommendations or complaints. Various employee groups participated, including the petitioners, and there is nothing in the record before this court that shows petitioners were limited or proscribed in any way in making their position known. Other than the issue of reallocation versus reclassification, dealt with above, and the issue of job peril or hazard, to be discussed in the second article 78 proceeding, petitioners advanced no reasons that would support their charge of arbitrariness or capriciousness by the respondent commission in denying their appeal. The fact that reasonable minds might have reached other conclusions after analysis of the same facts is wholly inadequate to warrant annulment (Matter of Schwartz v. Falk, 5 A D 2d 46) particularly when judicial interference is sought in what is essentially a legislative rather than an administrative function (Matter of Simons v. McGuire, 204 N. Y. 253).
The first CPLR article 78 proceeding is dismissed.
II
The second article 78 proceeding is actually a review of respondent’s confirmation of the finding by the Director of Classification and ¡Compensation that an application by the Civil Service Employees Association (CSEA) that all civilian employees in all State correctional institutions be upgraded because of the hazardous nature of their duties be denied. Since the CSEA appeal was pending at the time petitioners initiated • their article 78 proceedings, the one alleging hazardous duty as the gravamen of the complaint was severed to await the outcome of the CSEA appeal. The denial of the CSEA appeal by respondent .based, as it was, solely on the issue of hazardous duty of nonuniformed, civilian employees of the State correctional system, is res judicata with respect to an article 78 proceeding by like employees on the same issue.
*534 If the respondent acted within its authority and not arbitrarily or capriciously in affirming the conclusion of the Director of Classification and .Compensation by denying the CSEA appeal, then petitioners’ article 78 proceeding* based on the issue of hazard must be dismissed.
That the State should be concerned with working conditions for.its employees is elementary. It is a legislative function to set job titles, duties, responsibilities and qualifications and this function has been delegated to the Department of 'Civil Service and certain personnel of that department by article 8 of the .Civil Service Law. Thus, the department is a quasi-legislative unit when it reclassifies and the Civil Service Commission, as an adjunct to the Department of Civil Service, is a quasi-judicial body when it entertains appeals from employees allegedly aggrieved by the acts of the department when it functions quasi-legislatively. It was in this latter capacity that the Director of Classification and Compensation undertook the task of determining if working conditions of civilian employees of all State correctional units .were 'so fraught with peril, danger and/or hazard that said conditions, if found, should be a factor to be considered by him in determining if the 'CSEA application for job upgrading on those grounds should be granted. That such conditions, if found to exist, could be used by the Director in upgrading the titles and salaries, is unquestioned. That he concluded otherwise is, in my view, unchallengeable. I know of no requirement or mandate in the Constitution or statutory laws of this State that makes job peril or hazard a requisite consideration in job classification. To consider or not to consider such working conditions is a legislative function, and the conclusion, particularly after exhaustive investigation and review las evidenced by the 365 exhibits bearing on the issue annexed to the respondent’s papers in opposition, that the alleged hazardous conditions do not exist to a degree that would compel job upgrading, is not to be interfered with by the courts.
In the instant case the court is of the view that petitioners’ allegations of arbitrariness would not be sustainable even if respondent had not thoroughly investigated the complaints of job peril. I know of nothing in the law, as it presently exists, that would compel job reclassification because of hazard. It is the function of the legislative branch of government to set position titles and salaries and qualifications ito obtain and hold them. Until such time as the Legislature so acts, the courts are powerless to write into the law what they might consider to be its inadequacies.
*535 The decisional law of this State supports the view that administrative acts are not to be interfered with by the courts if any fair argument can be made to sustain their action, even if they differ with .such acts (People ex rel. Moriarty v. Creelman, 206 N. Y. 570; Matter of Laverty v. Finegan, 249 App. Div. 411, affd. 275 N. Y. 555; Matter of Davis v. Wiener, 260 App. Div. 127, affd. 285 N. Y. 537; Matter of Murray v. McNamara, 303 N. Y. 140; Matter of Wirzberger v. Watson, 305 N. Y. 507, 1513, cited with approval in Matter of Katz v. Hoberman, 28 N Y 2d 530).
The second article 78 proceeding is dismissed.